**Roger A. LAMP, Appellee,**

v.

**AMERICAN PROSTHETICS, INC., Appellant.**

No. 84–1428.

Supreme Court of Iowa.

Jan. 15, 1986.

Russell J. Hansen and Peter S. Cannon of Connolly, O'Malley, Lillis, Hansen & Olson, Des Moines, for appellant.

Jon S. Scoles of DeVries & Scoles, Mason City, for appellee.

LARSON, Justice.

Roger A. Lamp, a former employee of American Prosthetics, Inc., brought a declaratory judgment action to resolve the question of the enforceability of a restrictive covenant in his employment contract. The district court held the covenant was unenforceable and, on appeal, the court of appeals affirmed. On further review, we also affirm.

Lamp's contract of employment, as manager of American Prosthetics' Mason City

office, contained a covenant not to compete with the employer within 100 miles of any of its Iowa offices. Because of the relatively large number of offices in Iowa, the practical effect of the covenant was to prohibit competition in virtually the whole state. Lamp was discharged by American Prosthetics and immediately opened up a prosthetics business in the same building in which he had previously managed the business for his former employer. It is undisputed that, in his new venture, Lamp drew on the education and experience gained through his employment with American Prosthetics and actually serviced some of its former customers. American Prosthetics claimed a reduction in its Mason City business of approximately fifty percent.

▮ Because this case was tried in equity, our review is de novo. Iowa R.App.P. 4. In deciding whether to enforce a restrictive covenant, the court will apply a three-pronged test: (1) Is the restriction reasonably necessary for the protection of the employer's business; (2) is it unreasonably restrictive of the employee's rights; and (3) is it prejudicial to the public interest? *See Iowa Glass Depot, Inc. v. Jindrich*, 338 N.W.2d 376, 381 (Iowa 1983); *Ehlers v. Iowa Warehouse Co.*, 188 N.W.2d 368, 369 (Iowa 1971); *Baker v. Starkey*, 259 Iowa 480, 493, 144 N.W.2d 889, 897 (1966).

American Prosthetics argues that the restrictive covenant was enforceable as written. It has an alternative argument, however, that, in the event the court should find the restrictive covenant to be too broad to be enforced, it could modify it to allow partial enforcement. In presenting this argument, it relies on the *Ehlers* case, which first adopted that approach, and on *Farm Bureau Service Co. of Maynard v. Kohls*, 203 N.W.2d 209 (Iowa 1972), which applied the *Ehlers* rationale.

In *Ehlers* this court, in effect, overruled a line of prior Iowa cases which had held that a covenant which was too restrictive to be enforced could not be modified to salvage the enforceable provisions. 188

N.W.2d at 370. This "all or nothing at all" approach was based on the theory that the parties' agreement must be enforced, if at all, in the form in which it had been drafted; the court would not rewrite it for them. *See, e.g., Smith v. Stowell*, 256 Iowa 165, 125 N.W.2d 795 (1964). In *Smith*, this court quoted the following rule with approval:

> The court may not rewrite the contract for the purpose of accomplishing that which, in its opinion, may appear proper, or, on general principles of abstract justice, or under the rule of liberal construction, make for the parties a contract which they did not make for themselves, or make for them a better contract than they chose, or saw fit, to make for themselves, or remake a contract, under the guise of construction, because it later appears that a different agreement should have been consummated in the first instance, or in order to meet special circumstances or contingencies against which the parties have not protected themselves.

*Id.* at 172, 125 N.W.2d at 799 (quoting 17A C.J.S. *Contracts* § 296(3) (1963)). *See also Baker*, 259 Iowa at 490, 144 N.W.2d at 895. This view, that a court would not modify a restrictive covenant, was considered to be the majority view at the time *Ehlers* was decided. 188 N.W.2d at 370. The "emerging" view at the time of *Ehlers*, and the view espoused by such writers as Williston and Corbin, however, was that, if such a covenant is void only because it is too broad, a court in the interest of justice should require enforcement of it to the extent that it is not overbroad. *Id.*

The district court in the present case held the covenant was too broad to be enforced as written. It did not attempt to modify it. The court of appeals took the same approach. It held the agreement was too restrictive to be enforced. It did not address the issue of modification, although it was raised by American Prosthetics on appeal.

On further review to this court, American Prosthetics argues that this was error;

it argues that, if the court found the covenant to be too broad, it must, under *Ehlers* and its progeny, decide whether it was enforceable to any extent. It argues that, if the agreement is found to be overly broad by covering all American Prosthetics' offices in the state of Iowa, nevertheless a restrictive covenant prohibiting competition by Lamp, within a certain radius of Mason City, would be reasonable. The covenant, it argues, should at least be enforced to that extent.

■ We agree with the district court, and the court of appeals, that the restrictive covenant swept too broadly to be enforced as written. The evidence does not show such an extensive restriction is reasonably necessary to protect American Prosthetics. *See* 6A *Corbin on Contracts* § 1394, at 94–97 (1962).

■ The issue remains, however, whether we should enforce the covenant, as requested by American Prosthetics, to the extent it is not unreasonable. The problem with this approach is that, while *Ehlers* allows for modification of such agreements, it does not require a court to do so sua sponte. The issue of partial enforcement was never raised by the pleadings in district court, although it was mentioned in a trial court brief. Following an adverse ruling by the district court in which the issue was not addressed, American Prosthetics simply filed a notice of appeal. It did not file a motion under Iowa Rule of Civil Procedure 179(b) to bring the issue to the court's attention.

In *State Farm Mutual Auto Insurance Co. v. Pflibsen,* we said:

> It is well settled that a rule 179(b) motion is essential to preservation of error when a trial court fails to resolve an issue, claim, defense, or legal theory properly submitted to it for adjudication. Consequently, none of those separate issues are properly before us for decision. Issues must ordinarily be presented to and passed upon by the trial court before they may be raised and decided on appeal.

350 N.W.2d 202, 206–07 (Iowa 1984) (citations omitted).

Courts are naturally reluctant to remake contracts, *see Ehlers,* 188 N.W.2d at 376 (Becker, J. dissenting), and agreements in restraint of trade are generally disfavored. *Id.* ("We start with the basic tenets that restraints on competition and trade are disfavored in the law. Exceptions are made under narrowly prescribed limitations."); *Uptown Food Store, Inc. v. Ginsberg,* 255 Iowa 462, 467, 123 N.W.2d 59, 62–63 (1963); 17 C.J.S. *Contracts* § 238, at 1106 (1963).

In the face of these principles, a court must necessarily approach the issue of modification with a certain degree of reluctance. We believe in this case that, where the issue was not properly raised in district court, we should not address it for the first time on appeal. *Shill v. Careage Corp.,* 353 N.W.2d 416, 421 (Iowa 1984). A mere reference in a trial brief to the possibility of partial enforcement, without a pleading or rule 179(b) motion to pinpoint the issue, was not sufficient to preserve it for appeal. We conclude that failure to raise the issue in district court waived it for purposes of appeal.

DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.

All Justices concur except REYNOLDSON, C.J., who concurs in the result.