CASEY'S GENERAL STORES,
INC., Appellee,

v.

CAMPBELL OIL CO., INC., Les J.
Campbell and Norma Campbell,
Appellants.

No. 88–894.

Supreme Court of Iowa.

June 14, 1989.

John L. McKinney, Ames, and Barry J.
Nadler of Newbrough, Johnston, Brewer,
Maddux & Nadler, Ames, for appellants.

Robert G. Allbee, Wade R. Hauser III,
and David Swinton of Ahlers, Cooney, Dor-
weiler, Haynie, Smith & Allbee, Des
Moines, for appellee.

Considered by McGIVERIN, C.J., and
HARRIS, CARTER, SNELL, and
ANDREASEN, JJ.

CARTER, Justice.

Defendant Campbell Oil Co. (Campbell
Oil), a convenience store franchisee, and
defendants Les J. Campbell and Norma
Campbell, who are officers, directors, and
shareholders of Campbell Oil, appeal from
an award of money damages and injunctive

relief in favor of plaintiff, Casey's General Stores, Inc. (Casey's). The injunctive relief was granted against defendant Campbell Oil based on a noncompetition agreement in its franchise agreement with Casey's. The judgment for money damages was granted to Casey's against defendants Les J. Campbell and Norma Campbell for tortious interference with the franchise agreement between Casey's and Campbell Oil. Casey's has also appealed seeking a broader zone of protection under the noncompetition agreement than recognized by the district court.

In this appeal, we are called upon to determine the enforceability of a covenant not to compete between the franchisor and franchisee of a combination convenience store and self-service gas station during the term of the franchise. Campbell Oil contends the geographical area within which the trial court held the covenant could apply is so broad as to constitute an unreasonable restraint of trade. Defendants Les J. Campbell and Norma Campbell contend that the evidence fails to support the district court's finding that they tortiously interfered with the franchise agreement between Casey's and Campbell Oil. Upon consideration of the arguments of the parties, we affirm the district court's decree granting injunctive relief as modified in this opinion. We reverse the judgment of the district court granting money damages.

On May 3, 1977, Casey's, an Iowa corporation which owns and franchises the operation of combination convenience stores and self-service gas stations, entered into a franchise agreement with Campbell Oil Company. Campbell Oil is an Iowa corporation and a wholesale distributor of gasoline and other petroleum products. Pursuant to the agreement, Campbell Oil opened a combination retail convenience store and self-service gas station in Le Grand, Iowa, using the Casey's name. At the time of the contract, Campbell Oil already owned and operated a retail gasoline service station with limited groceries in Ames, Iowa.

In the franchise agreement prepared by Casey's, Campbell Oil agreed to the following covenant not to compete:

*Restrictions on Licensee:* So long as this Agreement shall remain in force and effect, the Licensee will not, directly or indirectly, except with the consent of the Company, engage in any business covered by this Agreement at any place other than such premises. The Licensee shall engage on such premises only in the business of operating a "Casey's General Store." Does not include gasoline filling stations with limited groceries.

The parties agree that the last sentence was added in order to exclude the Ames business already operated by Campbell Oil. The agreement recites that it has a duration of fifteen years.

In December 1981, Campbell Oil asked Casey's for another franchise to construct a Casey's store and gas station in Gilman, Iowa, approximately nine miles from the Le Grand store. In anticipation of reaching an agreement, Campbell Oil purchased the Gilman property for $25,000.

Campbell Oil and Casey's failed to reach an agreement with respect to a franchise at Gilman. On July 30, 1982, Campbell Oil sold the Gilman property to Les and Norma Campbell for $24,000. Les and Norma Campbell are the majority stockholders of Campbell Oil, as well as officers, directors, and salaried employees. Campbell Oil facilitated the purchase by loaning the Campbells the full purchase price, at seventeen percent interest, requiring no down payment.

Les and Norma Campbell constructed a combination convenience store and self-service gas station on the Gilman property. The Gilman store was operated under the name of "Cissy's," and was later referred to as "Cissy's I." Based on the high degree of similarity between the Cissy's store plan and construction plans which Casey's had furnished to Campbell Oil during negotiations for the second franchise, Casey's later obtained judgment against the Campbells in the United States District Court for the Southern District of Iowa for illegal appropriation of the plans.

In 1985, Les and Norma Campbell began construction of a second Cissy's convenience store, referred to as "Cissy's II," in State Center, Iowa. Cissy's II is approximately twenty-two miles from the Le Grand Casey's store and is located within ten blocks of a Casey's convenience store in State Center operated by an unrelated franchisee.

Campbell Oil has no ownership interest in either of the Cissy's stores. However, both Les and Norma Campbell devoted time to overseeing the operation of the Cissy's stores while remaining employees and officers of Campbell Oil. Darlene Gooding, employed by Campbell Oil as manager of the Le Grand Casey's store, was also paid by Les and Norma Campbell to work at the Cissy's store in Gilman. Campbell Oil was the only direct wholesale supplier of petroleum products to the Le Grand Casey's store as well as to the Cissy's stores.

In February 1986, Casey's brought the present action claiming Campbell Oil breached the covenant not to compete by selling the Gilman property to the Campbells, loaning them the money to purchase it, supplying them with Casey's construction plans, permitting Campbell Oil employees to assist in the management and operation of the Gilman store, and supplying it and the State Center store with wholesale petroleum products. Casey's sought an injunction preventing Campbell Oil and its shareholders, officers, and employees from owning and operating any competing stores. Casey's also sought injunctive relief against and monetary damages from Les and Norma Campbell as individuals for tortious interference with the franchise agreement, alleging they had induced Campbell Oil to breach the restrictive covenant.

After considering the evidence presented at trial, the district court concluded that the noncompetition clause of the Le Grand franchise agreement was unreasonably broad as to geographic area. Notwithstanding that deficiency, the court concluded that the agreement was enforceable "to the extent reasonable under the facts of the case being addressed." In implementing the latter conclusion, the district court found that it was reasonable for the franchisor to impose a prohibition against the franchisee competing within a three-mile radius of any other Casey's franchise, wherever located.

Within the context of the issues being litigated, the trial court's finding on the scope of the noncompetition clause rendered the Gilman Cissy's store outside the prohibited zone of competition and placed the State Center Cissy's store within the prohibited zone. In enforcing the noncompetition agreement with respect to the Casey's franchise in State Center, the district court concluded that Les and Norma Campbell, individually, were not parties to the agreement and could therefore not be enjoined from personally carrying on the business activities of the Cissy's store in State Center.

The court found, however, that Campbell Oil was indirectly competing against the State Center Casey's store by permitting its officers and employees, Les and Norma Campbell, to devote time to the management of Cissy's. The court's decree required Campbell Oil to remove Les and Norma Campbell as directors, officers or employees of the company unless they terminated their ownership and employment relationships with the Cissy's store in State Center. The court also enjoined Campbell Oil from directly or indirectly engaging in any business similar to a Casey's franchise within three miles of any existing Casey's franchise. This prohibition specifically included supplying petroleum products to the Cissy's store in State Center.

In addition to the grant of injunctive relief, the district court found that defendants Les J. Campbell and Norma Campbell had tortiously interfered with the contract between Casey's and Campbell Oil and awarded money damages against those defendants for that conduct. Additional facts bearing upon the disposition of the case will be stated in conjunction with our consideration of the legal issues presented in the appeal.

I. *Enforceability of Covenant Not to Compete.*

Both Campbell Oil and Casey's challenge the district court's findings as to what constitutes a reasonable geographic area for enforcement of the noncompetition clause. Campbell Oil contends that it should only be restrained from competition within a zone bounded by a reasonable radius from the Le Grand Casey's franchise rather than within a zone surrounding each and every Casey's franchise. Casey's, on the other hand, urges that the area of prohibited competition should extend ten miles from every existing Casey's franchise rather than the three-mile distance imposed in the district court's decree. Campbell Oil also urges that, whatever geographic limitation is imposed under the noncompetition clause, the district court's decree is overbroad as to the activities which it enjoins.

█ In *Ehlers v. Iowa Warehouse Co.,* 188 N.W.2d 368, 369 (Iowa 1971), this court overruled a line of prior cases which demanded an "all or nothing" approach in enforcing noncompetition agreements. Since *Ehlers,* we have recognized that if a covenant not to compete is too broadly drafted, a court may nonetheless require enforcement of it to the extent that it is not overbroad. *See, e.g., Lamp v. American Prosthetics, Inc.,* 379 N.W.2d 909, 910 (Iowa 1986); *Iowa Glass Depot, Inc. v. Jindrich,* 338 N.W.2d 376, 381 (Iowa 1983). Where a question is raised as to the territorial scope of a noncompetition agreement, it should be fairly enforced in view of the objects and purposes of the parties. 54 Am.Jur.2d *Monopolies* § 566, at 996 (1971).

We conclude that the district court's finding as to a reasonable geographic zone of protection was warranted by the evidence and should be upheld. As Campbell Oil notes in its argument, most of our decisions establishing geographic zones wherein competition is prohibited have protected locations within a specified radius of some business situs of the covenant obligor. In those cases, this approach was taken as a reasonable means of protecting the. interests of the covenant obligee. Notwithstanding the fact that this has been the

most usual method of establishing the geographical boundaries of noncompetition agreements, we conclude that in the present case the district court's attempt to protect the franchisor against competition at all existing franchise sites was proper.

█ Noncompetition agreements between a franchisor and a franchisee are designed not only to protect the interests of the immediate parties but also to protect other franchisees against competitive activities. Thus, to the extent that such noncompetition agreements are exacted from all franchisees, each franchisee is thereby protected from competition from other franchisees. As a consequence of this reciprocal protection, Campbell Oil, in exchange for the provisions restricting it from competing with other Casey's franchisees, benefits from the protections barring those franchisees from competing against it. The court in *Armstrong v. Taco Time International,* 30 Wash.App. 538, 545, 635 P.2d 1114, 1118 (1981), recognized that these reciprocal protections attendant to franchise agreements warranted enforcement against competition at all franchise locations. We find this reasoning to be persuasive and do not disturb the district court's determination that, during the term of the Campbell Oil franchise, competition should be restricted within a reasonable zone around all existing Casey's franchises.

In considering Casey's cross-appeal claim, that the zone of protected interest should extend ten miles from existing franchises rather than three miles, we must recognize that any determination of a reasonable geographic limit against competition must be arrived at in a somewhat arbitrary manner. While there was evidence from which the district court, or this court on a de novo review, might conclude that a broader area of geographic protection is warranted, we find that the district court's ultimate finding on this issue is reasonable and should not be disturbed.

█ Although we uphold the district court's findings with respect to the geographic zone of protection, we do not agree with that court's determination of the activ-

ities which violate the noncompetition clause. Casey's has never claimed that Les and Norma Campbell, as individuals, were subject to the noncompetition agreement. Nor is the relationship between Les and Norma Campbell and Campbell Oil such that it may be assumed that the corporation would dictate the Campbells' actions in these transactions.

As Campbell Oil points out in its argument, the relationship between itself, as a corporation, and Les and Norma Campbell imposes no servitude on the Campbells as individuals. As controlling shareholders, the Campbells control the actions of the corporation rather than the corporation controlling them. Given this relationship between the Campbells and the corporation which they control, we can discern no basis for concluding that the acts of Les and Norma Campbell in regard to the State Center Cissy's store were the acts of Campbell Oil. We therefore modify the district court's grant of injunctive relief by deleting the requirement that Les and Norma Campbell must elect between continuing as officers and employees of Campbell Oil and maintaining an ownership interest in the State Center Cissy's store.

 We also disagree with the district court's grant of injunctive relief which prohibited Campbell Oil from supplying petroleum products to the Cissy's store in State Center. We fail to see how that activity has any bearing on the protected area of retail competition between the franchisor and the franchisee. We modify the district court's grant of injunctive relief so as to delete any prohibition against Campbell Oil supplying petroleum products to persons in competition with Casey's franchises.

## II. Award of Damages for Tortious Interference.

We next consider the arguments of defendants Les J. Campbell and Norma Campbell that the record fails to support the district court's finding that they tortiously interfered with the noncompetition clause in the franchise agreement between Casey's and Campbell Oil. We will assume that any violations of the noncompetition clause by Campbell Oil were induced by these defendants. As a result of our conclusions in the preceding division of this opinion, however, Campbell Oil did not violate the noncompetition agreement at the State Center situs. Consequently, there was no interference with the franchise agreement which might be labeled as tortious.

Much of the evidence at trial concerning questionable competitive activities of Campbell Oil related to the operation at the Gilman store. Those activities can form no basis for upholding the tortious interference claim, however, because it has been determined that the Gilman store lies outside of the zone in which competition is prohibited. The judgment awarding money damages on the tortious interference claim is reversed, and the injunction is modified as herein provided. Costs on appeal are assessed twenty percent against appellants; eighty percent against appellee.

DECREE GRANTING INJUNCTIVE RELIEF AFFIRMED AS MODIFIED; JUDGMENT FOR MONEY DAMAGES REVERSED.